Enh NO JS-6 SEDOI

FILED
CLERK, U.S. DISTRICT COURT

MAY - 6 1999

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

MAY - 7 1999

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _____

DEPUTY CLERK _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMIR CHACHOUA, | CASE NO.  CV 97-5595 MMM (AJWx) |
| Plaintiff, | |
| vs. | ORDER RE PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS |
| CEDARS-SINAI MEDICAL CENTER; UNIVERSITY OF CALIFORNIA-LOS ANGELES SCHOOL OF MEDICINE/MEDICAL CENTER; JAMES D. LAUR; PAUL TERASAKI; DEAN WILLIAM DIGNAM, M.D.; THOMAS M. PRISELAC; JAMES R. KLINENEBERG, M.D.; GLEN D. BRAUNSTEIN, M.D.; SHLOMO MELMED, M.D.; DANIEL M. OSHIRO; PETER E. BRAVEMAN, ESQ.; ANDREW S. GARB, ESQ.; JAY F. WALKER; SUZANNE HENIG; DAVID BLAKE; LARRY ULAND; ERIC DAAR; HERBERTO LOPEZ-ADAME; RICARDO LOPEZ CISNEROS; AND HUMANTICS FOUNDATION, | |
| Defendants. | |

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _____

DEPUTY CLERK _____

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

This action concerns serums developed by Dr. Samir Chachoua, which were allegedly submitted for testing to UCLA and Cedars-Sinai to assess their efficacy in combating the HIV virus and different forms of cancer. After the greater part of his complaint was dismissed by the

Docketed
Mld copy Ptys
Mld Notice Ptys
JS-6

MAY 0 7 1999

ENTERED ON ICMS

148

1    court with leave to amend, Chachoua filed a third amended complaint, alleging causes of action

2    for breach of contract, conspiracy to defame, misappropriation of trade secrets, and civil RICO

3    violations against UCLA, Cedars-Sinai, various of their employees and legal counsel, and Henig,

4    Blake, Walker, and the Humantics Foundation ("the Henig defendants"). Defendants brought four

5    separate motions to dismiss Chachoua's third amended complaint.

6       On February 24, 1999, the court entered an order granting in part and denying in part

7    defendants' motions. Specifically, the court dismissed plaintiff's breach of contract claim against

8    all individual defendants without leave to amend, but afforded plaintiff an opportunity to amend

9    the claim against defendants Cedars-Sinai Medical Center and the Regents of the University of

10    California ("UCLA") in order to plead, separately and distinctly, the terms of plaintiff's alleged

11    contracts with each and the consideration supporting the contracts. The court dismissed plaintiff's

12    misappropriation of trade secrets claim against defendants Priselac, Klinenberg, Braunstein,

13    Braveman, Laur, Oshiro, Dignam, Henig, Blake, Walker, Humantics Foundation and Garb

14    without leave to amend. It afforded plaintiff an opportunity to amend the trade secrets claim

15    against the remaining defendants to allege facts demonstrating that he maintained his serums and

16    the processes used to manufacture them confidentially. Finally, the court dismissed plaintiff's

17    RICO claim without leave to amend, and denied defendants' motions as to plaintiff's conspiracy

18    to defame claim.

19       Some two months later, plaintiff has yet to file an amended complaint. Instead, he filed

20    a motion for reconsideration of the court's ruling on the misappropriation of trade secrets and

21    RICO claims, asserting that newly discovered evidence demonstrates that he should be given leave

22    to amend those claims. For the reasons set forth below, the court denies plaintiff's motion, and

23    directs him to file an amended complaint, consistent with the terms of the court's February 24,

24    1999 order, on or before April 30, 1999. Failure to do so will result in dismissal of the case for

25    failure to prosecute without further notice.

26

27                          **I. FACTUAL BACKGROUND**

28       This statement of facts recites and accepts as true the allegations contained in Chachoua's

1  third amended complaint.[1]  It focuses on the misappropriation of trade secrets and RICO claims

2  that are the subject of plaintiff's motion for reconsideration.

3      A.    The "Enterprise"

4      Plaintiff alleges that defendants collectively are "associated in fact" in an "enterprise,"

5  pursuant to which they have engaged in "concerted action" to enrich themselves through unlawful

6  activity.  He asserts that, before he established his relationship with the Cedars defendants, they

7  were familiar with the fact that his serums had been used successfully to treat cancer and AIDS

8  in humans.  Knowing he had developed these serums, plaintiff alleges that these defendants

9  developed a "Serum Testing Agreement Scheme" together with defendants Henig, Walker, Blake,

10  Uland, Lopez-Adame, Lopez-Cisneros and the Humantics Foundation.  He asserts that this

11  enterprise was legally advised, supported and ratified by defendants Garb, Braveman, and Laur,

12  and supervised and ratified by defendants Oshiro, Braunstein, Klinenberg, Priselac, Dignam and

13  UCLA.  The alleged purpose of the scheme was to defraud plaintiff and convert his serums and

14  biotechnology.

15      Unaware of the scheme, plaintiff alleges he entered into a "relationship" with UCLA and

16  Terasaki, a UCLA supervisor, in 1994, pursuant to which he gave UCLA thirty-six serums for

17  testing.  The serums submitted for testing included a "cold virus," as well as viral, bacterial,

18  biological and genetic extracts used to treat various forms of cancer, including melanoma and

19  leukemia.  Plaintiff alleges that defendants have concealed the location of his serums, and engaged

20  in monetary transactions involving the "criminally derived" property.

21      On November 7, 1994, Terasaki gave Chachoua test results for twenty of the thirty-six

22  serums, stated that initial testing had produced "interesting" results, and advised that "larger scale

23  experiments" had been commenced.  Plaintiff alleges that the data regarding the ability of the

24

25  _____

26  [1]With only a few modifications, these facts are drawn from the court's prior order, and
   thus record citations have been omitted.  In deciding a motion to dismiss, the court's review is

27  limited to the contents of the complaint.  *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir.
   1996).  All allegations of material fact must be taken as true, and construed in the light most

28  favorable to the non-moving party.  *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

twenty serums to combat cancer was favorable.  Based on these tests, and Terasaki's independent certification, he asserts that the value of a vaccine with the efficacy of his serums would conservatively be $50 million per year, per cancer type, and per viral type.

Plaintiff next alleges that, after the "enterprise" learned of his success in neutralizing the HIV virus, UCLA's "affiliate," Cedars-Sinai, implemented a "refined scheme" to rob him of his technology.  He asserts that, on January 23, 1996, defendant Melmed, a Cedars-Sinai employee, expressed interest in establishing a relationship with plaintiff for the purpose of testing his HIV serums.  On March 4, 1996, defendant Daar, the Director of Cedars-Sinai's AIDS and Immune Disorder Center ("the Cedars' Center"), allegedly corresponded with plaintiff, expressing a desire to test the serums and setting forth protocols that would be used for this purpose.

Plaintiff alleges that the "enterprise" thereafter entered into a "second agreement" with him regarding the testing and certification of his serums by the Cedars' Center.  In exchange for a payment of $11,200, Cedars was to test the serums for effectiveness in treating HIV, certify the results, and return any unused serum samples to plaintiff.

Plaintiff asserts that the "enterprise" failed to return unused serum samples, denied ever having received any of the serums for testing, and, in a series of letters authored by defendant Laur, took the position that the serums it had tested belonged to Manning Post.  Thereafter, defendants Cedars-Sinai and UCLA publicly denied receiving or testing any of plaintiff's serums, and denied having any relationship whatsoever with him.

### 1.  Misappropriation Of Trade Secrets

Plaintiff alleges that UCLA, Cedars and the Henig defendants misappropriated his trade secrets by retaining the serums they had tested and "reverse engineer[ing]" them.  This theft, he asserts, was committed on behalf of the enterprise.  Plaintiff contends that throughout the AIDS and cancer epidemics, UCLA and Cedars have greatly enriched themselves by testing and researching serums, treatments, and therapies for the diseases.  Indeed, he asserts that UCLA "made the cover of Time Magazine with a possible AIDS vaccine that bears a striking resemblance to [the] samples [he] provided to them," and suggests it "is possible that UCLA's vaccine was made with information gained from [his] serums."  He also alleges that defendant Uland

4

1   fraudulently acquired trade secrets and confidential information "concerning the manufacturing

2   and processing of plaintiff's serums," and "brought [them] to the enterprise."

3         **2.    RICO Predicate Acts**

4        Plaintiff alleges that defendants made a "written threat of actual or implied force or threat

5   of violence," to wit, they sent a letter stating: "[P]lease be assured that we will take complete

6   action, including the institution of legal action to prevent your client's misappropriation of Cedars-

7   Sinai's name."   Following this "threat," Chachoua "suffered media attacks, violent attacks and

8   bodily damage[,] was shot at, stabbed and had acid thrown in his face and eyes; plaintiff[']s lab

9   has been broken into [and] 200 cultures stolen, [his] lab [has been] destroyed, and plaintiff[']s

10   house [has been] shot at while plaintiff was locked inside."   Plaintiff asserts that his assailants

11   were "directly or indirectly" employed by the enterprise.

12         **3.    Chachoua's "New" Allegations**

13        Plaintiff seeks reconsideration of the court's prior ruling based on a purported new factual

14   development, i.e., that his "warehouse in Mexico was burglarized and his serums stolen.  The

15   thieves left a letter threatening [Chachoua] and specifically telling him to drop this litigation."[2]

16   Plaintiff claims that

17                  "persons currently unknown but believed to be agents of some, and

18                  possibly all, defendants, broke into a facility in Mexico that

19                  contained hundreds of Plaintiff's serums and technologies.  Most of

20                  the serums and technologies were taken and a letter was left that

21                  threatened Plaintiff regarding this lawsuit.  A police report was made

22                  . . . and the letter is currently in the possession of the Mexican

23                  police."[3]

24   Plaintiff notes that "[t]his is the second time that [he] has been robbed and violently threatened

25

26   ─────────────────────────

27      [2]Pl.'s Mot. for Reconsideration at 2:7-9.

28      [3]*Id.* at 3:3-8.

1  regarding this lawsuit."[4]  He appends to his motion an illegible photocopy of what he represents

2  to be a Mexican police report, written in the Spanish language.  Because it is largely illegible, this

3  exhibit violates Local Rule 3.4.1.[5]  Albeit with difficulty, the court is able to discern some of the

4  contents of the report, which lists common household items as the property stolen, i.e., a juicer

5  ("extractor de jugo"), video camera ("videograbadura"), fax machine ("fax sharp"), and fan

6  ("ventilador").

7       In further support of his motion, plaintiff alludes to a "videotape of Defendant Henig

8  [which] is available in which she discusses the availability of [Chachoua's] serums and refers to

9  them specifically by number."[6]  He claims that "[o]ther evidence exists that she and the other

10  Henig defendants, along with certain of the UCLA and Cedars defendants, have been actively

11  involved in marketing and selling [his] serums."[7]  Chachoua gives no indication what this "other

12  evidence" may be.  Nor does he produce a copy of the videotape purportedly showing Henig.

13  Chachoua claims, nevertheless, that the "recent theft indicates that [Henig] needed to replenish

14  her supply" of his serums, and thus that it is "evidence of [the Henig defendants] misappropriation

15  of his trade secrets."[8]

16

17

18

19

---

20       [4]*Id.*

21

22  [5]Local Rule 3.4.1 requires that "[a]ll pleadings, motions, affidavits, declarations, briefs,
   points and authorities,  and all other papers and documents, including all exhibits thereto
23  (hereinafter collectively referred to as "documents"), presented for filing or lodging with the
   Clerk, shall be typewritten or printed, or prepared by a photocopying or other duplicating process
24  that will produce clear and permanent copies equally legible to printing, in black or dark blue
   ink."
25

26       [6]Pl.'s Mot. for Reconsideration, at 3:25-26.

27       [7]*Id.* at 4:1-3.

28       [8]*Id.* at 4:4-8.

6

# II. DISCUSSION

## A.    Standard Governing Motions For Reconsideration

Plaintiff cites no authority explaining the basis of his motion for reconsideration.  Thus, the court deems it a request for an order granting him (1) relief from the court's prior order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, and/or (2) leave to amend his complaint pursuant to Rule 15(a), to reassert his civil RICO claim and reallege his trade secrets claim against the defendants dismissed from that count.  See *Bradshaw v. Zoological Soc'y*, 662 F.2d 1301, 1304 (9th Cir.1981) ("[B]y the terms of Fed.R.Civ.P. 15(a), an order denying leave to amend is inherently tentative, . . . 'subject to reconsideration from time to time'" (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949)).

Construed under Rule 60(b), the court may relieve a party from judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) any other reason justifying relief from operation of the judgment. See Fed.R.Civ.P. 60(b).

In addition to Rule 60(b), this court is empowered to reconsider its decisions on prior motions pursuant to Local Rule 7.16.  This rule provides:

> "A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise or reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition

7

1    to the original motion." Local Rule 7.16.

2    Newly discovered evidence may also be a proper basis for granting leave to amend

3   pursuant to Rule 15(a). See *Heatherton v. Playboy, Inc.*, 60 F.R.D. 372 (C.D.Cal. 1973)

4   (plaintiff entitled to amend complaint to substitute party where plaintiff's attorney did not know

5   of his existence until after filing the original complaint and moved to amend immediately upon

6   becoming aware of such existence). Where the claim has previously been dismissed, however,

7   the new evidence must add substance to the dismissed claims. See *Stebbins v. Weaver*, 537 F.2d

8   939 (7th Cir. 1976), cert. denied, 429 U.S. 1041 (1976) (motion to file an amended complaint

9   was properly denied where the proposed complaint alleged no new facts that would have required

10  the district court to reconsider its earlier decision); *Hutchinson v. Lausell*, 672 F.Supp. 43, 46

11  (D.P.R. 1987) (plaintiff's motion to amend was properly denied where the purported new

12  evidence did not add any substance to the original complaint).

13   In ruling on a Rule 15(a) motion, the court may consider the "repeated failure to cure

14  deficiencies by previous amendments, undue prejudice to the opposing party and futility of the

15  proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.

16  1989). If the proposed amendments to the complaint will fail to cure fatally defective allegations,

17  denying leave to file the amended complaint is proper. *Moore, supra*, 885 F.2d at 538, 540-41.

18  See also *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend need not be granted to

19  permit amendments that would serve no purpose); *Bruno Wine & Spirits, Inc. v. Guimarra

20  Vineyards*, 573 F.Supp. 337 (D.C.Wis. 1983) (where the amended pleading could be defeated by

21  a motion to dismiss, leave to amend may be denied since granting leave would be a futile gesture);

22  *Collyard v. Washington Capitals*, 477 F.Supp. 1247 (D.C.Minn. 1979) (same); *Baker v. Pacific

23  Far E. Lines, Inc.*, 451 F.Supp. 84 (C.D.Cal. 1978) (same).

24   Under either standard, the court must consider whether plaintiff has presented new

25  evidence or factual allegations that materially alter its prior dismissal of his civil RICO claim and

26  certain defendants from his misappropriation of trade secrets claim.

27  **B.    Civil RICO**

28   As noted above, the court previously dismissed Chachoua's claim for relief under the

8

1    Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. without leave to
2    amend. It based this ruling on the fact that, while plaintiff claimed that defendants had obtained
3    his serums by "robbery," the facts he alleged demonstrated that he had provided them voluntarily
4    to UCLA and Cedars-Sinai for testing. Plaintiff did not allege that defendants used force or
5    threats to compel him to give them the serums.[9] Accordingly, the court found plaintiff failed to
6    allege a predicate act under § 1951.

7        To state a RICO claim, plaintiff must allege that defendant (a) received income derived
8    from a pattern of racketeering activity or the collection of an unlawful debt, and used that income
9    to acquire or invest in an enterprise in interstate commerce; (b) acquired or maintained an interest
10   in, or control of, an enterprise engaged in interstate commerce through a pattern of racketeering
11   activity; (c) caused an enterprise engaged in interstate commerce, while employed by the
12   enterprise, to conduct or participate in a pattern of racketeering activity; or (d) conspired to
13   engage in any of these activities. 18 U.S.C. § 1962.

14       Each of the forms of prohibited conduct requires a *pattern* of racketeering activity. A
15   pattern of racketeering activity requires at least two predicate acts. 18 U.S.C. § 1961(5). The
16   statute sets forth a number of criminal violations that constitute "racketeering activity" (see 18
17   U.S.C. § 1961(1)), and plaintiff cites a number of them in his RICO count: 18 U.S.C. §§ 1951,
18   1952(a)(1) and (a)(3), 1953, 1956(3)(a) and (3)(b), and 1962. Only § 1951 is relevant to his
19   motion for reconsideration.

20       Section 1951 makes it a crime for any person to obstruct or delay commerce by robbery
21   or extortion, or to attempt or conspire to do so. It also makes it a crime to commit or threaten
22   physical violence to any person in furtherance of a plan to violate the section. 18 U.S.C. §

23

24   _____

     [9]Plaintiff alleges that defendants made a "written threat of actual or implied force or threat
25   of violence [in the form of a letter] stating 'please be assured that we will take complete action,
     including the institution of legal action to prevent your client[']s misappropriation of Cedars-
26   Sinai's name.'" (Complaint, ¶ 57.) He further alleges that he was the victim of numerous
     physical assaults by defendants' agents. (*Id.*, ¶¶ 58 and 59.) These allegations do not allege
27   activities prohibited by § 1951 because the alleged threat of legal action and physical attacks
28   occurred after defendants were in possession of plaintiff's serums.

1  1951(a). Section 1951 defines "robbery" as the unlawful taking of personal property from a

2  person against his will by means of actual or threatened force or violence (18 U.S.C. §

3  1951(b)(1)), and extortion, *inter alia*, as the obtaining of property from another, with consent,

4  induced by wrongful use of actual or threatened force or violence (18 U.S.C. § 1951(b)(2)).

5  Plaintiff moves for reconsideration of the dismissal of his RICO claim on the basis that

6  "*persons currently unknown but believed to be agents of some, and possibly all, defendants*" broke

7  into his facility in Mexico, stole his serums and technologies, and left a note "threatening Plaintiff

8  and specifically telling him to drop this litigation."[10] Chachoua has not submitted a copy of the

9  purported note, which he contends is currently in the possession of the Mexican police. Nor does

10  he recount the text of the allegedly threatening communication or summarize its contents, except

11  to claim that it directs him to drop this suit and couples this with a threat of some sort.

12  Plaintiff admits that the alleged perpetrators of the burglary are *unknown*, and fails to

13  allege any facts that might establish a connection between them and defendants. Nor does he

14  explain the basis for his suspicion that they were agents of some or all of the defendants. He

15  merely asserts that it is so. Such conclusory allegations do not adequately plead a viable RICO

16  claim. See *Davis v. Hudgin,* 896 F.Supp. 561, 568 (E.D.Va. 1995) (conclusory allegations that

17  multiple acts of racketeering activity by disparate parties were part of a common scheme was

18  insufficient to state a claim under RICO). Consequently, the new information cannot form a part

19  of any pattern of racketeering activity on the part of the defendants.

20  Moreover, the new allegations are not different in substance from allegations in prior

21  complaints that plaintiff was "physically assaulted and beaten," that "the enterprise hired American

22  thugs and sent them across the border to Mexico to kill or injure plaintiff," and that they warned

23  him to drop the lawsuit.[11] The new allegations suffer from the same deficiencies as the matters

24  set forth in the count that was dismissed. Thus, plaintiff has presented no new evidence that

25  materially alter the set of facts that were before the court when it ruled on defendants' motions

26  _____

27  [10]Pl.'s Mot. for Reconsideration at 2:7-9 & 3:3-4.

28  [11]See Second Amended Complaint, ¶¶ 31-32; Third Amended Complaint, ¶ 31.

1   to dismiss.  Plaintiff's motion for reconsideration of the ruling on his civil RICO claim is,
2   accordingly, denied.

3       **C.**    **Misappropriation Of Trade Secrets**

4       The court previously dismissed certain defendants from Chachoua's claim for
5   misappropriation of trade secrets without leave to amend, namely Priselac, Klinenberg,
6   Braunstein, Braveman, Laur, Oshiro, Dignam, Henig, Blake, Walker, Humantics Foundation,
7   and Garb.  Plaintiff asks the court to reconsider so much of its order as dismissed the Henig
8   defendants.

9       In his claim for "Misappropriation of Trade Secrets/Unfair Competition," plaintiff alleges
10  that "defendants['] in-concerted actions were aimed at securing an on-going economic advantage
11  for themselves and to discredit and rob Plaintiff's serums . . . ."[12] Chachoua alleges, *inter alia*,
12  that defendants "reversed engineered" his serums, which constituted theft and misappropriat[ion]
13  of [his] trade secrets."[13]  Under the Uniform Trade Secrets Act ("UTSA"), codified in California
14  as California Civil Code §§ 3426-3426.10, a "trade secret" is defined as:

15          "a formula, pattern, compilation, program, device, method or
16          technique, or process that:
17          (1) Derives independent economic value, actual or potential, from
18          not being generally known to the public or to other persons who can
19          obtain economic value from its disclosure or use; and
20          (2) Is the subject matter of efforts that are reasonable under the
21          circumstances to maintain its secrecy." Cal.Civ.Code § 3426.1(d).
22  Both of these elements must be alleged and proved before a protectable trade secret can be found.
23  See *American Credit Indemnity Co. v. Sacks*, 213 Cal.App.3d 622, 630-31 (1989).  Plaintiff
24
25
26  ——————————
27  [12]Third Amended Complaint, ¶ 88.
28  [13]*Id.*, ¶ 36.

1  alleges that his cures, assuming they are effective, will be valuable once they are developed.[14]

2  There are no allegations supporting the second element of the definition — that plaintiff took

3  reasonable measures to maintain the secrecy of the serums and their methods of manufacture.[15]

4     Additionally, plaintiff must allege that defendants misappropriated his trade secrets.  The

5  UTSA defines "misappropriation" as follows:

6     "(1) Acquisition of a trade secret of another by a person who knows

7     or has reason to know that the trade secret was acquired by improper

8     means; or

9     (2) Disclosure or use of a trade secret of another without express or

10    implied consent by a person who:  . . . (B) At the time of disclosure

11    or use, knew or had reason to know that his or her knowledge of the

12    trade secret was: . . . (ii) Acquired under circumstances giving rise

13    to a duty to maintain its secrecy or limit its use; or (iii) Derived from

14    or through a person who owed a duty to the person seeking relief to

15    maintain its secrecy or limit its use;  . . ."   Cal.Civ.Code §

16    3426.1(b).

17 Acquisition by theft is a form of misappropriation, and would adequately state the

18 misappropriation element of the tort against the burglars.  See Cal.Civ.Code § 3426.1(a).

19 Plaintiff, however, has not identified the burglars, or linked them in any way to defendants in this

20 case.  He alleges that a videotape of Henig "is available" in which she refers to his serums by

21 number, and claims that this somehow connects her to the crime.  Importantly, Chachoua does

22 not indicate when he obtained the videotape evidence, or that it is newly discovered.  He also

23 alludes to "other evidence," but fails utterly to describe it or explain why it has not been presented

24 to the court.

25

---

26  [14]*Id.*, ¶¶ 38, 86.

27  [15]*It was to permit plaintiff to allege, if he could, this element of the tort that the court*

28 granted him leave to amend the trade secret claim as against the remaining defendants.

12

1   Referring to Henig, Chachoua explains that the "recent theft indicates that she needed to
2   replenish her supply" of his serums, and thus is "evidence of their misappropriation of his trade
3   secrets."[16]   As one of the defendants points out, this is inconsistent with his claim that she
4   previously misappropriated trade secrets, since it would be unnecessary for Henig to steal serums
5   from plaintiff's Mexican facility if she had previously obtained and reverse-engineered them.
6   Furthermore, the police report, which is largely illegible, refers to the theft of stereo equipment
7   and other household items, not secret serums.   It also appears that, contrary to plaintiff's
8   assertion, the break-in took place on January 8, 1999, prior to the last hearing before this court.
9   More fundamentally, plaintiff simply has not alleged facts that adequately support an inference
10   that the Henig defendants stole his serums.

11

12                                **III. CONCLUSION**

13   The court believes that it did not misapply the law and that its prior decision is not clearly
14   erroneous.   The alleged facts presented by plaintiff do not constitute "newly discovered evidence"
15   sufficient to support reconsideration of the ruling, and the court is aware of no intervening change
16   in law that would affect the outcome of its prior order.   Thus, plaintiff's motion for
17   reconsideration is denied.   Plaintiff is directed to file an amended complaint, consistent with the
18   terms of the court's February 24, 1999 order, on or before April 30, 1999.   Failure to do so will
19   result in dismissal of the case for failure to prosecute without further notice.

20

21   DATED:   April 19, 1999                    _Margaret M. Morrow_
22                                              MARGARET M. MORROW
                                                UNITED STATES DISTRICT JUDGE
23

24

25

26

27   _____

28   [16]Id. at 4:4-8.

                                                13